# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **Deborah Mahnke,** <br> **Scott Mahnke,** <br><br> Plaintiffs, <br><br> v. <br><br> **Executive Tans, USA, LLC,** <br> **CSE International, LLC,** <br> **Colorado Special Events, Inc.,** <br> **Wayne Smeal,** <br><br> Defendants. | **Civil No. 07-1416 (DSD-JJG)** <br><br><br> **REPORT** <br> **AND** <br> **RECOMMENDATION** |

JEANNE J. GRAHAM, United States Magistrate Judge

The above matter came before the undersigned on May 29, 2007 on the defendants' motion to dismiss, or in the alternative, to stay pending arbitration (Doc. No. 5). Harvey H. Eckert, Esq., appeared for plaintiffs Deborah Mahnke and Scott Mahnke. Charles R. Schreffler, Esq., appeared for the defendants. The motion is before this Court for a report and recommendation in accordance with 28 U.S.C. § 636(b) and Local Rule 72.1(b).

## I.  BACKGROUND

This litigation arises out of a franchise agreement between plaintiffs Deborah Mahnke and Scott Mahnke (the Mahnkes), through their purported corporation S&D Mahnke, and defendant Executive Tans. S&D Mahnke is not named as a plaintiff in lieu the Mahnkes, whose standing to proceed here is not contested.

The defendants are Executive Tans; CSE International, its purported successor in interest; Colorado Special Events, a purported parent of Executive Tans; and Wayne Smeal, who is an officer or stakeholder in these entities. Because the defendants are all represented by the same counsel and their interests appear to be identical, this report refers to them collectively as Executive Tans.

The Mahnkes bring action for fraud, negligence, promissory estoppel, breach of contract, and violation of the Minnesota Franchise Act (MFA). They assert one other claim, styled as "equitable estoppel and failure of the essential purpose of the franchise agreement," which also arises out of the franchise agreement and may be treated as another claim for breach of contract. They chiefly allege that Executive Tans misrepresented the funds needed to capitalize an Executive Tans franchise, as well as the potential revenues from the franchise. Their franchise failed and they suffered substantial losses.

Executive Tans now moves to dismiss this matter, or in the alternative, to stay pending the outcome of arbitration. Because the parties' franchise agreement contains an arbitration clause, it contends that arbitration is required under the Federal Arbitration Act (FAA).

## II. ANALYSIS

### A. *Colorado River* Abstention

A threshold concern is posed by parallel litigation of this dispute in a Colorado state district court. The Mahnkes filed their action in a Minnesota district court on February 13, 2007, and it was subsequently removed to this Court. Executive Tans brought a separate action in a Colorado district court on February 26, 2007, where it petitioned for an order compelling the Mahnkes to submit to arbitration.

In the memorandum supporting its motion to dismiss, Executive Tans suggested that it was appropriate for this Court to decline jurisdiction while proceedings before the Colorado district court were

pending. Six days before the hearing on Executive Tans' motion to dismiss here, the Colorado district court issued its decision. At the motion hearing on May 29, 2007, this Court asked about the applicability of the *Colorado River* abstention doctrine under these circumstances.

The typical remedy, where *Colorado River* abstention occurs, is to stay or dismiss until the state court proceeding is concluded. Because the Colorado district court has already proceeded to a final judgment, concerns about *Colorado River* abstention have become moot. *See Illinois Sch. Dist. Agency v. Pacific Ins. Co.*, 471 F.3d 714, 724 n. 4 (7th Cir. 2006). This Court concludes that further discussion of *Colorado River* abstention is not necessary.

### B. Preemption

The next question, and the parties' most contentious dispute, involves the law controlling the arbitration clause in the franchise agreement. Executive Tans relies on the main text of the franchise agreement, which provides,

> This Agreement shall be governed and construed in accordance with the laws of the State of Colorado. Should there be any dispute between the Franchisor and the Franchisee arising from this Agreement and the rights and obligations of the Franchisor and the Franchisee as set forth in this Agreement, the parties agree that all such disputes shall be submitted to mandatory binding arbitration in Lakewood, Colorado . . . . The parties consent to jurisdiction and venue in the Colorado District Court . . . for entry of judgment, injunctive relief, and other matters not properly arbitrated.

3

The Mahnkes contend this language is superseded by an addendum to the agreement, the Minnesota Addendum, which purports to execute certain requirements under Minnesota law. It provides in relevant part,

> Minnesota Statute Section 80C.21 and Minnesota Rule 2860.4400J prohibits the Franchisor from requiring litigation to be conducted outside Minnesota. In addition, nothing in the Offering Circular or Franchise Agreement shall abrogate or reduce any of the Franchisee's rights as provided for in [the MFA] or the Franchisee's rights to any procedure, form or remedies provided for by the laws of the jurisdiction.

The Mahnkes argue that, in accordance with the laws cited in this provision, they have the right to a judicial forum in Minnesota.

The parties raise multiple arguments about the relationship of these two provisions. But the controlling question is whether the Minnesota Addendum is preempted by the arbitration clause, so that remedies under Minnesota law[1] are superseded by remedies under federal law.

This question was authoritatively answered by the U.S. Supreme Court in *Southland Corp. v. Keating*. 465 U.S. 1 (1984). That case also involved a franchisor who, pursuant to the terms of the

---

[1] The parties devote some discussion to the question of whether Minnesota law actually mandates access to courts in the state of Minnesota. There is no such provision in the MFA. And Minnesota Rule 2860.4400, subp. J (2000) provides that it is an unfair practice to

> require a franchisee to waive his or her rights to a jury trial or to waive rights to any procedure, forum, or remedies provided by the laws of the jurisdiction . . . *provided that this part shall not bar an exclusive arbitration clause.*

(Emphasis added.) The rule would appear to permit the operation of an arbitration clause under most circumstances. Nevertheless, the following argument assumes for the sake of argument that under Minnesota law, a franchise may avoid an arbitration clause and seek relief in Minnesota courts.

4

parties' franchise agreement, sought a stay pending arbitration in accordance with the FAA. The franchisee challenged the stay, asserting that under California franchising law, the arbitration clause was void. *See id.* at 10.

Based on the history of the FAA, the Court determined that Congress intended to foreclose any state legislative attempts to foreclose arbitration agreements. It then went on to hold that the California law was preempted, pursuant to the Supremacy Clause, and that the arbitration clause was enforceable under the FAA. *Id.* at 16.

This District later applied the rule of *Southland* in *Seymour v. Gloria Jean's Coffee Bean Franchising Corp.* 732 F.Supp. 988 (D.Minn. 1990). It examined language virtually identical to the Minnesota Addendum at issue here. The *Seymour* court held that the FAA preempted operation of the Minnesota Addendum and, in accordance with an arbitration clause, granted a stay pending arbitration.[2] *Id.* at 991-92, 996.

The same reasoning controls here. Even if the Minnesota Addendum permitted the Mahnkes to avoid the arbitration clause, it is preempted by federal law under the FAA.[3] So the remaining analysis is

---

[2] The *Seymour* court also provided substantial analysis regarding the potential effect of the decision of the U.S. Supreme Court in *Volt Information Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468 (1989). The Court concluded that, notwithstanding the FAA, state law still controlled whether the parties had selected particular arbitration procedures under an arbitration agreement. *Id.* at 476-77. *Volt* has no impact on the analysis in this litigation, and the Court itself has since emphasized that *Volt* does not disturb the enforceability of arbitration clauses under the FAA. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 688 (1996).

[3] This conclusion means that it is not necessary to address Executive Tans' argument that, because it did not agree to the Minnesota Addendum, it is not part of the franchise agreement.

necessarily confined to the arbitration clause as it appears in the main text of the parties' franchise agreement.

### C.     Arbitrability

The next question, therefore, is whether the parties' dispute is subject to arbitration under the FAA. The parties have not disputed that they are engaged in interstate commerce, which brings their franchise agreement within the ambit of that law. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273 (1995).

The purpose of the FAA is to promote the speedy and summary disposition of cases through arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Co.*, 460 U.S. 1, 24-25, 27 (1983). A stay pending arbitration is authorized under § 3 of the FAA, which provides in relevant part,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.  To determine whether a stay is required under this provision, a court must examine whether a valid agreement to arbitrate exists, and if so, whether the claims raised in litigation are subject to the agreement. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001).

#### 1.     Valid Agreement to Arbitrate

On the question of whether the parties have a valid agreement to arbitrate, the Mahnkes argue that the agreement is invalid because of fraud in the inducement. But this issue is not necessarily litigated before the court.

If a party claims it was fraudulently induced to enter the *entire contract*, then litigation of this defense is deferred to arbitration. If a party only claims it was fraudulently induced to enter *just the arbitration clause*, the issue is litigated before the court. *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S.Ct. 1204, 1208 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967).

The Mahnkes claim that Executive Tans misrepresented the funds required to capitalize a franchise, as well as the potential revenues from a franchise. These matters are material to whether or not the Mahnkes would have entered the franchise agreement as a whole, not just their execution of the arbitration clause.

For this reason, the Mahnkes' defense of fraud in the inducement is accordingly deferred to arbitration.[4] The record otherwise shows that the parties duly executed an arbitration agreement. For the purposes of this analysis, it is valid and enforceable for the purposes of obtaining a stay under the FAA.

The Mahnkes counter with the decision of the Minnesota Supreme Court in *Onvoy, Inc. v. Shal, LLC*. 669 N.W.2d 344 (Minn. 2003). This decision provides that, where a defense will make an arbitration clause *void* rather than *voidable*, the defense should be decided by the court before granting a stay. *Id.* at 353. Although some federal circuit courts have adopted this rule, the Eighth Circuit is not

---

[4] In an argument that is arguably inconsistent with their motion, Executive Tans suggests that the Mahnkes have the burden of establishing fraud in the inducement at this stage of the proceedings. In support of this proposition, it indirectly relies on the decision of the U.S. Supreme Court in *Green Tree Financial Corp. v. Randolph*. 531 U.S. 79 (2000). This decision, however, does not address the question of invalidity. It only discusses the burden of a party who opposes arbitration under the FAA because of unconscionable expenses, which is inapposite here. *See id.* at 91-92.

among them. *See, e.g., Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32 (2d Cir. 2001); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 106-08 (3d Cir. 2000).

Even if this rule applied, it does not alter the outcome here. A contract is void if it is entirely unenforceable, notwithstanding its execution by the parties. A contract is voidable where it may be held void, but the wronged party also has the option to ratify and enforce the contract. Restatement (Second) of Contracts § 7 (1981); *see also Shoels v. Klebold*, 375 F.3d 1054, 1069 (10th Cir. 2004). Fraud in the inducement only makes a contract voidable, and as a result, this defense need not be litigated at this time. *See, e.g., Western Cities Broad. v. Schueller*, 849 P.2d 44, 48 (Colo. 1993).

### 2.     Claims Subject to the Agreement

The other issue is whether the claims raised in this litigation are subject to the arbitration agreement. This issue turns on the interpretation of that agreement, which is done in accordance with applicable state law. *See, e.g., AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co.*, 242 F.3d 777, 780 (8th Cir. 2001); *Keymar v. Mgmt. Recruiters Int'l*, 169 F.3d 501, 504 (8th Cir. 1999).

The choice-of-law clause in the franchise agreement here provides that it is controlled by the law of Colorado. Such a clause is ordinarily enforced. *See Milliken & Co. v. Eagle Packaging Co.*, 295 N.W.2d 377, 380 n. 1 (Minn. 1980). The Mahnkes imply, however, that the MFA requires the application of Minnesota law. The MFA provides in relevant part,

> Any condition . . ., including any choice of law provision, purporting to bind [a potential franchisee] . . . to waive compliance or which has the effect of waiving compliance with [the MFA] or any rule or provision thereunder is void.

Minn. Stat. § 80C.21. This language may mean that a choice-of-law clause is void only to the extent that it bars operation of the MFA. Or it might mean that where a choice-of-law clause bars operation of the MFA, that clause is void altogether. No published authorities have answered this question.

This distinction, nevertheless, does not materially influence the analysis here. Both Colorado and Minnesota authorities apply the same fundamental principles when examining the enforceability of an arbitration clause. And both have generally adopted the philosophy of the federal courts under the FAA, taking a liberal approach to whether particular claims are subject to arbitration. *See Lane v. Urgitus*, 145 P.3d 672, 679 (Colo. 2006); *Onvoy, Inc. v. Shal, LLC*, 669 N.W.2d 344, 353 (Minn. 2003).

In accordance with these authorities, an arbitration clause is interpreted consistent with the intent of the parties. That intent is ascertained by looking to the language of the agreement, and if that language is not reasonably susceptible of more than one interpretation, it is given effect. *Simitar Entertainment, Inc. v. Silva Entertainment, Inc.*, 44 F.Supp.2d 986, 993 (D.Minn. 1999); *Lane*, 145 P.3d at 677-78.

Where an arbitration clause is broadly worded, stating that it controls all disputes arising out of or related to a contract, it embraces tort claims incident to that contract. *See, e.g., Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 499-500 (8th Cir. 2007); *Simitar Entertainment, Inc.*, 55 F.Supp.2d at 994; *Winter Park Real Estate & Invs., Inc. v. Anderson*, — P.3d —, 2007 WL 1017611 at *5-*6 (Colo. Ct. App. 2007).

The arbitration clause here states that it controls "any dispute between [the parties] arising from this Agreement and the rights and obligations of [the parties] as set forth in this Agreement[.]" Given the broad scope of this language, it is reasonable to conclude that it covers all disputes arising out of the franchise

agreement, including all related tort claims. The arbitration clause accordingly covers all the claims in the Mahnkes' complaint, and it is suitable to stay pending arbitration under the FAA.

### D.     Remedy

Where litigation is subject to arbitration under the FAA, the typical remedy is for the matter to be stayed pending arbitration. But in its motion to dismiss, Executive Tans does not seek this relief. It instead asks that this matter be dismissed, in its entirety, without prejudice.

There is currently a split among the authorities on this question. A minority of circuits forbid dismissal, reasoning that this remedy is not permitted under the plain language of the FAA. Because the FAA contemplates post-arbitral review in the federal courts, they add that Congress must have intended courts to retain jurisdiction over the dispute. This outcome also means that, when a court orders a stay pending arbitration, there is no final judgment and the order cannot be appealed. *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004); *Adair Bus Sales v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994).

The majority permits dismissal. They reason that, once the claims in the original complaint are submitted to arbitration, none of those claims survive in court. The remaining remedy is for post-arbitral review, which is necessarily absent from the original complaint. Because the complaint fails to state a claim, the court has discretion to dismiss. This remedy also results in a final judgment, which allows the losing party to appeal. *See Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *accord, Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001); *Bercovich v. Baldwin Sch. Dist.*, 133 F.3d 141, 156 n. 21 (1st Cir. 1998); *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 637-38 (9th Cir. 1988).

The Eighth Circuit has yet to take a position on this issue. This Court concludes that the majority position has merit and that it provides an appropriate remedy here. So if the parties' dispute is subject to arbitration, this matter may be dismissed without prejudice.

## III.  CONCLUSION

Assuming that Minnesota law permits the Mahnkes to avoid arbitration, it is preempted by federal law under the FAA. The parties' arbitration agreement is valid, and the Mahnkes' claims fall within the scope of that agreement. Because the parties' dispute is subject to arbitration under the FAA, it is appropriate for this litigation to be dismissed without prejudice. This Court concludes, therefore, that Executive Tans' motion to dismiss should be granted.

## IV.  RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. The defendants' motion to dismiss, or in the alternative, to stay pending arbitration (Doc. No. 5) be **GRANTED.**

2. All claims in this matter be **DISMISSED WITHOUT PREJUDICE.**

3. This litigation be dismissed in its entirety and judgment entered.

Dated this 24th day of July, 2007.                                         s/Jeanne J. Graham

                                                                                            JEANNE J. GRAHAM
                                                                                            United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by August 10, 2007. A party may respond to the objections within

ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. The District Court shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties stipulate that the District Court is not required, under 28 U.S.C. § 636, to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.